Filed 9/15/16  Hamilton v. Tootell CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PAUL C. HAMILTON,<br><br>  Plaintiff and Appellant,<br><br>v.<br><br>CMO DR. ELENA TOOTELL ET AL.,<br><br>  Defendants and Respondents. | A144291<br><br>(Marin County<br>Super. Ct. No. CIV-1403715) |

Plaintiff Paul C. Hamilton is an inmate incarcerated at San Quentin State Prison serving a life sentence.  In October 2014, he filed a complaint against several prison physicians (defendants), alleging medical malpractice and intentional infliction of emotional distress, stemming from the denial of his request for a permanent lower bunk accommodation.  He sought $5 million in compensatory damages and $ 6 million in punitive damages.  He appeals in propria persona from an adverse judgment entered following an order of the superior court sustaining defendants' demurrer without leave to amend and striking his claim for punitive damages.  We affirm the judgment.  We also deny without prejudice the motion by the defendants to declare plaintiff a vexatious litigant.

## I. BACKGROUND

Plaintiff filed his complaint on October 1, 2014.  The complaint reveals that, after plaintiff had been occupying a lower bunk for some time, his primary care provider determined that he presented no evidence of any mobility impairment that required a

1

lower bunk.  A medical committee determined that plaintiff no longer met the criteria for a lower bunk authorization, which the prison refers to as a "chrono."  Consistent with San Quentin operating policy and state guidelines, the medical committee determined that plaintiff did not have a medical need for a low bunk.[1]  The committee noted that although plaintiff's age made him potentially eligible for a lower bunk accommodation, age alone did not guarantee him a lower bunk.  The committee further remarked that even though plaintiff was not entitled to a mandatory lower bunk assignment he was currently housed on a low bunk.  The committee advised plaintiff that his medical condition would continue to be monitored with care.

Plaintiff did not allege any physical injuries associated with the refusal to grant him a permanent lower bunk accommodation.  The complaint, instead, alleges that plaintiff has suffered "many sleepless nights," worrying that at anytime he could be re-housed on an upper bunk, and that this uncertainty presents "the danger of creating a hostile environment" between himself and the security staff.

Defendants filed a general demurrer and a motion to strike plaintiff's demand for punitive damages.  Plaintiff opposed both motions.   In sustaining the demurrer without leave to amend, the trial court ruled that plaintiff had failed to state a cause of action for either medical malpractice or intentional infliction of emotional distress.  As to the medical malpractice claim, the court ruled that plaintiff had failed to establish that defendants breached the applicable standard of care by refusing to order a permanent lower bunk accommodation.  The court further determined that plaintiff had failed to allege any compensable damages.  As for the intentional infliction of emotional distress claim, the trial court found that plaintiff had not alleged any facts that defendants' actions were intended to cause harm to plaintiff or that such actions were extreme or outrageous. The court also ruled that plaintiff's "sleepless nights" and worries about the possibility

---

[1]      Specifically, there was no evidence that plaintiff had any of the following conditions: 1) significant functional limitations of at least one extremity; 2) recovery from recent major surgery; 3) motor seizure disorder; and 4) equipment making the use of the top bunk impossible, i.e., breathing machines.

that he might be reassigned to an upper bunk at some time in the future were not so severe or extreme as to constitute compensable emotional distress. The trial court concluded that there was no reasonable probability that plaintiff could cure the defects in the complaint and, as such, the demurrer was sustained without leave to amend.

Finally, the trial court ruled that plaintiff failed to seek leave of court, as required by Code of Civil Procedure section 425.13, before requesting punitive damages in a medical malpractice action. Additionally, the court found that the complaint failed to allege facts rising to the level of oppressive, fraudulent, malicious, or despicable conduct.

Plaintiff appealed. In his original designation of the record and in a supplement, he noticed only three documents: 1) notice of appeal; 2) notice designating the record on appeal; and 3) the judgment. However, plaintiff attached various documents to his opening brief and later filed a request that we consider these documents as part of his appeal. We granted plaintiff's request without making a determination as to the documents' relevance. Thereafter, defendants filed a motion to strike the documents appended to the opening brief and to strike unsupported arguments in that brief. We granted defendants' motion to strike the documents and denied the motion to strike the arguments in the opening brief, except to the extent such arguments rely on the stricken documents.

Defendants also filed a motion to declare plaintiff a vexatious litigant; to require him to post security before this case could proceed; and to issue a pre-filing order. Plaintiff opposed the motion. We denied the request that plaintiff post security. We further ruled that the motion to declare plaintiff a vexatious litigant and to issue a pre-filing order would be decided with the merits of the appeal.

## II. DISCUSSION

The trial court sustained defendants' demurrer without leave to amend on the grounds that plaintiff failed to allege a cause of action for either medical malpractice or intentional infliction of distress and that there appeared to be no reasonable probability that he could cure these defects.

### A. *Appellant's Burden*

3

Before addressing any substantive issues that may have been raised by plaintiff in this appeal, we are compelled to identify the serious procedural deficiencies existing in his filings with this court.

It was plaintiff's burden, as the appellant, to present an adequate record for review. (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187.)  This he has not done.  More significantly, the opening brief contains no citation to the record in support of his assertions of fact and his recitation of procedural matters occurring below. (See California Rules of Court, rule 8.204(a)(1)(C); *Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771, 800-801 [failure to include citations to appellate record in brief may result in forfeiture of claim].)  Plaintiff's reply brief is similarly deficient.

The failure to cite to the record belies the most fundamental problem with plaintiff's appeal: his failure to procure an adequate appellate record.  Plaintiff failed to designate the relevant documents from the court below—i.e., the operative complaint, the demurrer, the opposition to the demurrer, the reply papers submitted in support of the demurrer, and the transcript of the hearing—necessary for us to perform an intelligent review of his claims.  Part of the appellant's burden in showing error is to provide an adequate record from which the claimed error may be demonstrated; the failure to present such a record requires that the issue be resolved against the appellant.  (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295-1296; see also *Wagner v. Wagner* (2008) 162 Cal.App.4th 249, 259 [failure of appellant to include transcript of hearing foreclosed court's review of claim of error].)  This burden on appellant applies when his or her challenge is that the court erred in sustaining a demurrer to the complaint without leave to amend.  (*Bains v. Moores* (2009) 172 Cal.App.4th 445, 478 [court rejects claim that demurrer improperly sustained where appellant failed to present adequate record by including operative complaint and demurrers].)

Further, as an appellate court, we are not required to consider alleged error when the appellant merely complains of error without offering pertinent or intelligible argument to support the appellant's position.  (See *Berger v. Godden* (1985) 163

4

Cal.App.3d 1113, 1119-1120; *Dabney v. Dabney* (2002) 104 Cal.App.4th 379, 384 [court disregards argument for which no authority is furnished].)

We acknowledge that plaintiff is representing himself in connection with this appeal and therefore has not had the formal legal training that would be beneficial to him in advocating his position. However, the rules of civil procedure apply with equal force to self–represented parties as they do to those represented by attorneys. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985.) Thus, "[w]hen a litigant is appearing in propria persona, he is entitled to the same, but no greater, consideration than other litigants and attorneys." (*Nelson v. Gaunt* (1981) 125 Cal.App.3d 623, 638; see also *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246–1247.)

Based upon the noncompliant nature of plaintiff's briefs and his failure to present an adequate appellate record, it would be appropriate for us here to entirely disregard his contentions as having been forfeited. (See *State Comp. Ins. Fund v. WallDesign Inc.* (2011) 199 Cal.App.4th 1525, 1528-1529, fn. 1.) Defendants, however, have filled many of the gaps by submitting a request for judicial notice of the necessary documents, which we hereby grant.

Therefore, in the interests of addressing the merits of the case—and without impliedly minimizing the significance of plaintiff's noncompliance with appellate procedures—we will address below the contention by plaintiff that his complaint stated viable causes of action and that defendants' demurrers were improperly sustained without leave to amend.

## B.    *Standard of Review*

A demurrer is used to test the sufficiency of the factual allegations of the complaint to state a cause of action. (Code Civ. Proc., § 430.10, subd. (e).) The facts pled are assumed to be true, and the only issue is whether they are legally sufficient to state a cause of action.

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.

5

[Citation.]  We also consider matters which may be judicially noticed.'  [Citation.]  Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]  When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.  [Citation.]  And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff.  [Citation.]"  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

Our standard of review is de novo: "Treating as true all material facts properly pleaded, we determine de novo whether the factual allegations of the complaint are adequate to state a cause of action under any legal theory, regardless of the title under which the factual basis for relief is stated.  [Citation.]"  (*Burns v. Neiman Marcus Group, Inc.* (2009) 173 Cal.App.4th 479, 486.)

"[T]he cardinal rule of appellate review [is] that a judgment or order of the trial court is presumed correct and prejudicial error must be affirmatively shown.  (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court.  "[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented."  '  (*Bennett v. McCall* (1993) 19 Cal.App.4th 122, 127.)  This general principle of appellate practice is an aspect of the constitutional doctrine of reversible error.  (*State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 610.)"  (*Foust v. San Jose Construction, Co., supra,* 198 Cal.App.4th 181, 187.)

## C.    *The Complaint Fails to State a Cause of Action for Medical Malpractice*

Plaintiff contends the trial court failed to draw all inferences in support of his complaint and that it erroneously confused his claim as one of medical negligence instead of medical malpractice.

6

In arguing that the trial court failed to apply the appropriate standard in sustaining the demurrer, he appears to suggest that the court failed to give adequate weight to the facts he set forth describing the alleged acts of medical malpractice. "It is not the ordinary function of a demurrer to test the truth of the plaintiff's allegations or the accuracy with which he describes the defendant's conduct. A demurrer tests only the legal sufficiency of the pleading." (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 213, superseded by statute on another ground, as stated in *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 227.) Thus, as noted, "the facts alleged in the pleading are deemed to be true, however improbable they may be. [Citation.]" (*Del E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593, 604; see also *Alcorn v. Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [court reviewing propriety of ruling on demurrer is not concerned with the "plaintiff's ability to prove . . . allegations, or the possible difficulty in making such proof"].) It is a fundamental tenet that a demurrer admits all well-pleaded facts, and presents for adjudication only issues of law. (Code Civ. Proc., § 589, subd. (a); *Aragon-Haas v. Family Security Ins. Services, Inc.* (1991) 231 Cal.App.3d 232, 238-239.) Accordingly, factual disputes cannot be determined by way of demurrer. To the extent plaintiff appears to suggest otherwise, he his mistaken.

Next, medical malpractice, whether referred to as medical negligence or professional negligence is at its core a claim for negligence.[2] As with all negligence claims, a plaintiff must plead facts showing 1) duty; 2) breach of the duty; 3) a proximate causal connection between the negligent conduct and resulting injury; and 4) actual loss or damage. (*Flowers v. Torrance Memorial Hospital Medical Center, supra,* 8 Cal.4th

---

[2]     While the distinction between "ordinary" and "professional" negligence "may be relevant and necessary for purposes of statutory construction and application [citation], . . . it is misplaced" at the demurrer stage in which the question is whether complaint states a cause of action. (See *Flowers v. Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992, 997 [discussing distinction in context of motion for summary judgment].)

992, 999; see also *Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917; *Burgess v. Superior Court* (1992) 2 Cal.4th 1064, 1077.)

As pleaded in his complaint, plaintiff stated no breach of duty, resulting injury, or actual damage. According to Inmate Medical Services Policies and Procedures, Volume 4, Chapter 2, Comprehensive Accommodation Chrono, the relevant considerations for lower bunk accommodation includes the following: "due to advanced age, the inmate-patient *is at risk of injuring him/herself* by climbing to the upper bunk. For purposes of this criterion, advanced age is considered to be 60 years old." (Italics added.) The complaint reveals that plaintiff's primary care provider determined there was no evidence that plaintiff had a mobility impairment requiring a lower bunk assignment. Additionally, a medical committee determined that plaintiff did not meet the established criteria for a permanent bunk assignment.

The complaint contains no allegations of a current mobility impairment or otherwise alleges facts establishing that defendants breached the applicable standard of care. Rather, the gist of his complaint is that his age, then 65 years old, coupled with his medical history entitled him to a permanent lower bunk assignment.

Even if the complaint adequately alleged a breach of duty, it fails to include allegations of any resulting injury and compensable damages. Based on the facts pleaded and incorporated into the complaint, it is alleged that plaintiff is currently assigned to a lower bunk, and his physical condition will be evaluated periodically by his physician. Civil Code section 3283 provides that "[d]amages may be awarded . . . for detriment resulting after the commencement thereof, or *certain to result in the future.*" (Italics added.) Plaintiff has not alleged that he has suffered actual damages with the requisite degree of certainty. Rather, as pleaded in the complaint, plaintiff has endured "sleepless nights" worrying that he one day he could be reassigned to an upper bunk and that this uncertainty risks "creating a hostile environment between [plaintiff] and security staff . . . ." Damages, however, " 'which are speculative, remote, imaginary, contingent, or merely possible cannot serve as legal basis for recovery.' [Citations.]" (*Piscitelli v. Friedenberg* (2001) 87 Cal.App.4th 953, 989.)

Accordingly, the trial court did not err in sustaining the demurrer.

8

***D.*** ***The Complaint Fails to State a Cause of Action for Intentional Infliction of Emotional Distress***

Plaintiff fails to specifically address the ruling that the complaint failed to state a claim for intentional infliction of emotional distress. Ordinarily, an appellant forfeits a claim of error by failing to raise the issue in the appellate briefing. (See *Osornio v. Weingarten* (2004) 124 Cal.App.4th 304, 316 , fn. 7 (" 'Issues do not have a life of their own: if they are not raised or supported by argument or citation to authority, we consider the issues waived.' ") Nevertheless, in the interest of justice, we address this issue and conclude that any claim of error fails on the merits.

In this case, plaintiff alleged he endured "sleepless nights" worrying that he one day could be reassigned to an upper bunk and that this uncertainty risks "creating a hostile environment between [plaintiff] and security staff . . . ." However, he did not allege any facts to set forth a cause of action for intentional infliction of emotional distress.

The elements of cause of action for intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050-1051.) "A defendant's conduct is said to be 'outrageous' when it is so ' " 'extreme as to exceed all bounds of that usually tolerated in a civilized community.' " ' [Citation.]" (*Id.* at pp. 1050-1051.) And the defendant's conduct must be " ' " 'intended to inflict injury or engaged in with the realization that injury will result.' " ' [Citation.]" (*Id.* at p. 1051.)

"Liability for intentional infliction of emotional distress ' "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." ' [Citations.]" With respect to the requirement that a plaintiff show severe emotional distress, the California Supreme Court "has set a high bar. 'Severe emotional distress

9

means " 'emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.' " ' [Citation.]" (*Hughes v. Pair, supra,* 46 Cal.4th at p. 1051.)

In this case, plaintiff did not plead facts demonstrating that defendants engaged in extreme or outrageous conduct, that he suffered severe or extreme emotional distress, or that defendants intended to cause emotional distress. Absent the allegation of facts essential to a cause of action for intentional infliction of emotional distress, we must affirm the order of the trial court sustaining defendants' demurrer.

**E.       *The Trial Court Did Not Abuse its Discretion By Sustaining the Demurrer Without Leave to Amend***

Although plaintiff fails to address the propriety of the trial court's decision to sustain the demurer without leave to amend, we nevertheless address the issue in the interest of justice.

Essential to any review by an appellate court of a ruling sustaining a demurrer without leave to amend are two fundamental issues: (1) whether the substantive allegations state a cause of action, and (2) if not, whether there is a reasonable possibility that the defect may be cured by amendment. (*Blank v. Kirwan, supra,* 39 Cal.3d at p. 318.) Whether to grant leave to amend a complaint is a matter within the discretion of the trial court. (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 320.) If the reviewing court sees a reasonable possibility that the plaintiff could cure the defect by amendment, then it concludes that the trial court abused its discretion in denying leave to amend. If the reviewing court determines otherwise, then it concludes the trial court did not abuse its discretion. The plaintiff has the burden of proving that an amendment would cure the defect. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

The plaintiff must show in what manner he or she can amend the complaint and how that amendment will change the legal effect of his or her pleading. (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349; *Hendy v. Losse* (1991) 54 Cal.3d 723, 742.) In *Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 711, the

10

court held: "While such a showing can be made for the first time to the reviewing court [citation], *it must be made.*" (Italics added.) (*Medina v. Safe–Guard Products, Internat., Inc.* (2008) 164 Cal.App.4th 105, 112-113, fn. 8.)

In this case, plaintiff has not shown in what manner he could amend the complaint or how that amendment would change the legal effect of the pleading. Accordingly, the trial court did not abuse its discretion in sustaining defendant's demurrer without leave to amend.

## F. *The Trial Court Properly Granted the Motion to Strike the Punitive Damages Demand*

According to plaintiff, "[p]unitive damages are almost always granted and awarded in civil actions . . . absent a court's leave to seek" such damages. And, as such, he insists the order granting the motion to strike his claim for punitive damages "should as a matter of law be reversed." This claim is without merit.

"[W]henever an injured party seeks punitive damages for an injury that is directly related to the professional services provided by a health care provider acting in its capacity as such, then the action is one 'arising out of the professional negligence of a health care provider,' and the party must comply with section [Code of Civil Procedure] 425.13[, subdivision] (a)." (*Central Pathology Service Medical Clinic, Inc. v. Superior Court* (1992) 3 Cal.4th 181, 191-192.) Pursuant to Code of Civil Procedure section 425.13, subdivision (a), a plaintiff must seek leave of court before seeking punitive damages arising out of the professional negligence of a healthcare provider. To obtain such leave, the plaintiff must file supporting affidavits showing a substantial probability that the plaintiff will prevail. (Code Civ. Proc., § 425.13, subd. (a); Civ. Code, § 3294.)

"The legislative intent in enacting section 425.13 was to provide a pretrial hurdle to punitive damages claims against health care providers . . . '[T]he Legislature added section 425.13 . . . due to . . . policy concerns " 'that unsubstantiated claims for punitive damages were being included in complaints against health care providers.' " [Citations.] The effect of section 425.13 is to add additional protections against such claims, " 'by

11

establishing a pretrial hearing mechanism by which the court would determine whether an action for punitive damages could proceed.' [Citation.]" ' [Citation.]" (*Cryolife, Inc. v. Superior Court* (2003) 110 Cal.App.4th 1145, 1157-1158.)

Here, plaintiff did not obtain leave of court as required by Code of Civil Procedure section 425.16, subdivision (a). Moreover, he failed to allege that the defendants engaged in any oppressive, fraudulent, or malicious conduct and that he suffered any actual damage as a result of such conduct. (See (Civ. Code, § 3294.) Accordingly, the trial court properly granted the motion to strike plaintiff's demand for punitive damages.

## G.   *Vexatious Litigant*

Defendants have requested that this court declare plaintiff to be a vexatious litigant and issue a prefiling order requiring him to obtain permission before filing any further litigation in pro. per. (See Code Civ. Proc., § 391.7.) It is tempting to entertain the motion in that plaintiff has litigated over a dozen meritless actions within the past seven years. Although we possess the power in the first instance to declare a party a vexatious litigant and issue a prefiling order (see *In re R.H.* (2009) 170 Cal.App.4th 678, 691-692, disapproved an another point in *John v. Superior Court* (2016) 63 Cal.4th 91, 99, fn. 2), we decline to do so here for reasons we explain.

A review of the vexatious litigant listing maintained by the State of California reveals that very few of the determinations have been made by Courts of Appeal.[3] That should not come as a surprise. Because a vexatious litigant determination requires factual findings and an exercise of discretion, the issue is typically and most appropriately addressed in the trial court. There may be circumstances in which it is appropriate for the Court of Appeal to consider the issue in the first instance, such as when the actions supporting a vexatious litigant determination take place in the appellate court or when considerations of judicial efficiency dictate that no purpose would be served by delaying consideration of a meritorious motion. (See *In re R.H., supra,* 170 Cal.App.4th at

---

[1.] See *http://www.courts.ca.gov/documents/vexlit.pdf*, listing orders prohibiting future filings entered through August 31, 2016.

pp. 691-692; *In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 1005-1006.)

Here, the vexatious litigant motion was primarily based upon the outcome of past litigation and actions taken by plaintiff in the trial court. The objectionable conduct largely did not take place in this court. Consequently, it is not the case that this court is uniquely positioned to consider the conduct supporting the vexatious litigant motion. Therefore, we deny the vexatious litigant motion without prejudice to the right to pursue relief in the trial court.

## III. DISPOSITION

The judgment is affirmed. The motion to declare plaintiff a vexatious litigant is denied without prejudice to the right to pursue the motion in the trial court.

_____
Reardon, J.

We concur:


_____
Ruvolo, P.J.


_____
Streeter, J.

A144291